IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

COLIN P. MUMM,

Plaintiff,

vs.

MICHAEL J. ASTRUE, Commission
of Social Security,

Defendant.

No. C11-0127

RULING ON JUDICIAL REVIEW

## TABLE OF CONTENTS

*I.*    *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*II.*   *PROCEDURAL BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*III.*  *PRINCIPLES OF REVIEW* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*IV.*   *FACTS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    *A.*   *Mumm's Education and Employment Background* . . . . . . . . . . . . 5
    *B.*   *Administrative Hearing Testimony* . . . . . . . . . . . . . . . . . . . 5
        *1.*   *Mumm's Testimony* . . . . . . . . . . . . . . . . . . . . . . 5
        *2.*   *Darcey Lee Mumm's Testimony* . . . . . . . . . . . . . . . . 6
        *3.*   *Vocational Expert's Testimony* . . . . . . . . . . . . . . . . 7
    *C.*   *Mumm's Medical History* . . . . . . . . . . . . . . . . . . . . . . . 9

*V.*    *CONCLUSIONS OF LAW* . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
    *A.*   *ALJ's Disability Determination* . . . . . . . . . . . . . . . . . . . . 13
    *B.*   *Objections Raised By Claimant* . . . . . . . . . . . . . . . . . . . . 15
        *1.*   *Inclusion of Work-Related Limitations* . . . . . . . . . . . . 15
        *2.*   *Evaluation of Mumm's Subjective Allegations* . . . . . . . . 18

*VI.*   *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*VII.*  *ORDER* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

## I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 3) filed by Plaintiff Colin P. Mumm on November 23, 2011, requesting judicial review of the Social Security Commissioner's decision to deny his applications for Title II disability insurance benefits and Title XVI supplemental security income ("SSI") benefits. Mumm asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide him disability insurance benefits and SSI benefits. In the alternative, Mumm requests the Court to remand this matter for further proceedings.

## II. PROCEDURAL BACKGROUND

On November 4, 2008, Mumm applied for SSI benefits and child's disability insurance benefits. In his applications, Mumm alleged an inability to work since October 31, 2008 due to borderline intellectual functioning, learning disorder, major depressive disorder, and pervasive developmental disorder. Mumm's applications were denied on March 4, 2009. On May 29, 2009, his applications were denied on reconsideration. On June 29, 2009, Mumm requested a hearing before an Administrative Law Judge ("ALJ"). On July 26, 2010, Mumm appeared via video conference with his attorney before ALJ Thomas M. Donahue for an administrative hearing. In a decision dated August 4, 2010, the ALJ denied Mumm's claims. The ALJ determined that Mumm was not disabled and not entitled to SSI benefits or disability insurance benefits because he was functionally capable of performing various jobs that exist in significant numbers in the national economy, including hand packager, kitchen helper/dishwasher, and laundry worker II, with the following nonexertional limitations: low stress level, such as a level 3 out of 10, the ability to perform simple routine tasks, and limited contact with co-workers.[1] Mumm appealed the ALJ's decision. On September 23, 2011, the Appeals Council denied

---

[1] The ALJ noted that because Mumm had no past relevant work, the transferability of his job skills was a nonissue. *See* Administrative Record at 11.

Mumm's request for review. Consequently, the ALJ's August 4, 2010 decision was adopted as the Commissioner's final decision.

On November 23, 2011, Mumm filed this action for judicial review. The Commissioner filed an answer on March 9, 2012. On April 10, 2012, Mumm filed a brief arguing that the ALJ failed to adequately consider all of the evaluating psychologist's work-related limitations in assessing Mumm's work capabilities, failed to provide adequate reasons for not considering the psychologist's full evaluation, and improperly discounted Mumm's subjective complaints. On June 8, 2012, the Commissioner filed a responsive brief arguing that the ALJ's decision was correct and asking the Court to affirm the ALJ's decision. On February 2, 2012, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

### III. PRINCIPLES OF REVIEW

Title 42, United States Code, Section 405(g) provides that the Commissioner's final determination following an administrative hearing not to award disability insurance benefits is subject to judicial review. 42 U.S.C. § 405(g). Pursuant to 42 U.S.C. § 1383(c)(3), the Commissioner's final determination after an administrative hearing not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3). Title 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." Id.

The Court will "affirm the ALJ's decision if it is supported by substantial evidence on the record as a whole." Gates v. Astrue, 627 F.3d 1080, 1082 (8th Cir. 2010) (citation omitted). Evidence is "substantial evidence" if a reasonable person would find it adequate to support the ALJ's determination. Id. (citing Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005)); see also Wildman v. Astrue, 596 F.3d 959, 963-64 (8th Cir. 2010)

("Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000))).

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Moore v. Astrue*, 623 F.3d 599, 602 (8th Cir. 2010); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (review of an ALJ's decision "extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Casey v. Astrue*, 503 F.3d 687 (8th Cir. 2007), the Eighth Circuit further explained that a court "will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 691 (citations omitted). "A decision is not outside that 'zone of choice' simply because [a court] may have reached a different conclusion had [the court] been the fact finder in the first instance." *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006). Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams*, 393 F.3d at 801 (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Wildman*, 596 F.3d at 964 ("If substantial evidence supports the ALJ's

decision, we will not reverse the decision merely because substantial evidence would have also supported a contrary outcome, or because we would have decided differently."); *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("If there is substantial evidence to support the Commissioner's conclusion, we may not reverse even though there may also be substantial evidence to support the opposite conclusion." (quoting *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005))).

## IV. FACTS

### A. Mumm's Education and Employment Background

Mumm was born in 1990.  At the administrative hearing, Mumm testified that he completed school up through the ninth grade, during which he was placed in special education classes.  Mumm's mother, Darcy Lee Mumm, testified that Mumm attended EduCare, a tutoring program, while he was in elementary school.  Mumm has no work history.

### B. Administrative Hearing Testimony

#### 1. Mumm's Testimony

At the administrative hearing, Mumm testified that his reading and spelling were "okay," and that he could write, though his penmanship was poor.  Mumm's attorney then asked about his "mental condition":

> Q: . . . And you filed for disability because of your mental condition, I assume?
>
> A: Yes.
>
> Q: . . . [A]re you under anybody's care or treatment at the current time?  Do . . . you go to the psychiatrist, psychologist?
>
> A: No, I do not.
>
> Q: Are you taking any medication for your condition?
>
> A: No, I'm not.  But at one time, I was.
>
> Q: Did, when you did take medicine, did it seem to make any difference, in terms of how you acted or behaved or --

> A:   It was my anxiety.
>
> Q:   . . . [W]ere you fearful of going out, doing things outside the house?
>
> A:   Sure.  And that was also because of my temper.
>
> Q:   Hard to control your temper?
>
> A:   Yes.
>
> Q:   . . . [A]nd there's also a diagnosis, at one point, of major depressive disorder.  Do you still have problems with depression?
>
> A;   Yes.
>
> Q:   . . . [D]o you have thoughts of hurting yourself or others, that kind of thing?
>
> A:   Hurting others, maybe.

Administrative Record at 30-32.  When Mumm's attorney asked if he understood his diagnosis of "pervasive developmental disorder," Mumm indicated that he did not. Mumm testified that he had never worked, stating that he "just never really tried to work," citing his fear of and difficulty being around other people, which stems from him being teased in school when he was younger.  He testified that he lives with his parents, does not go anywhere by himself, and that he does not drive because he is not able to take the driver's license exam.

### 2.   *Darcey Lee Mumm's Testimony*

Mumm's mother, Darcy Lee Mumm, also testified at the administrative hearing. Mumm's attorney questioned Ms. Mumm:

> Q:   What I really need to hear from you are limitations you see in [Mumm], Colin getting out of the house, doing things on his own.  What are your observations?
>
> A:   Just always, he gets out and is very uncomfortable. . . . He's just very uncomfortable around people.  And I just kept thinking he'd grow out of that.  I don't know, but he just never had.  I mean, even as an adult, he wouldn't go somewhere.  He just really prefers not to go . . . places often.  He needs the exposure.
>
> Q:   Without your direction, do you think he would do anything outside the house?

> A:   No.  Unless, he does have a couple friends.  Unless
> they would, you know, come to our house, and then get
> him, and take him to a movie, because . . . it's dark in
> the movie, you know, the seats, you know, something
> like that.  Otherwise, no.

Administrative Record at 36-37.  When asked about his educational history, she testified that Mumm had been enrolled in special education classes since preschool through the ninth grade.  She stated that at one point in elementary school, Mumm was enrolled in EduCare and received special tutoring, but still had difficulty with reading, writing, and math.  She testified that while in the ninth grade one of Mumm's teachers would yell at him if he asked for help.

Mumm's mother described her experience dealing with Mumm's mental illness:

> Q:   Do you see any signs of depression?
> A:   Yes.
> Q:   What, what do you see?
> A:   He'll stay in his room, sleep. . . .  Crawl into bed with
> me at night, you know, when he's really depressed and
> . . . he says 'You know what mom? . . .  I'm really
> more of a problem to you guys than, than something,
> you know, and no one is ever going to like me.'  It's
> just the worst thing. . . .  We try to tell him, until
> you're blue in the face, 'You're wonderful and some
> day, some day, it will click.'

Administrative Record at 40.  She also testified that Mumm enjoys swimming and that he socializes with a small group of men who are older than he is.  When Mumm's attorney asked her if she thought he would be successful in a nine-to-five job, she responded:

> A:   I don't know.  I mean, he, he, when he has something
> that he's good at it, he's a perfectionist, you know.  We
> just keep hoping he'll find that one--
> Q:   And that's kind of the Asperger's--
> A:   Yeah.

Administrative Record at 42.

### 3.   *Vocational Expert's Testimony*

At the hearing, the ALJ provided vocational expert Elizabeth Albrecht with a hypothetical:

> [B]eing age 19, male. He had ninth grade special ed. No past relevant work. No exertional limitations. . . . Would need a low-stress level job, such as a level of three. With, also limited to simple, routine tasks and would require jobs with no contact with the general public and limited contact with fellow workers. Since there's no past relevant work, obviously there can be no past relevant work or transferable skills. Would there be any unskilled work?

Administrative Record at 43-44. The vocational expert testified that several such jobs were available, including: approximately 2000 jobs in Iowa as a hand packager, approximately 2500 jobs in Iowa as a kitchen helper/dishwasher, and approximately 500 jobs in Iowa as a laundry worker. The ALJ then provided the vocational expert with a second hypothetical:

> [Being] age 19. Male. He has ninth grade special ed. No past relevant work. No exertional limitations. . . . Would need a low-stress level, such as three, with 10 being the most stressful and one being the least stressful. Would require a job limited to simple, routine tasks. Would also have to have a job with no contact with the general public, limited contact with fellow workers. Due to a mental impairment or other reason, the Claimant would miss three or more days of work per month. Previously, you answered no past relevant work, no transferable skills. . . .Would there be unskilled work?

Administrative Record at 44-45. In response to the second hypothetical, the expert stated that there would be no competitive employment available to such an individual.

When questioned by Mumm's attorney, the vocational expert indicated that there would similarly be no competitive employment for an individual who "had to work at a slow pace, up to a third of the day, due to their limitations with not being able to deal with the public or co-workers." Administrative Record at 45. With respect to the first hypothetical, the vocational expert testified that no independent judgment was required, and that overall there would likely be no change in either pattern given someone who had

8

"a great deal of difficulty dealing with changes in the work setting or location." Administrative Record at 46.

### C. Mumm's Medical History

At the age of eight, Mumm was referred to psychiatrist Carlos S. Castillo after both Mumm's mother and the Kenwood school system observed Mumm being easily frustrated at school and having an inability to make friends due to his temper. On November 27, 1988, Dr. Castillo evaluated Mumm. Dr. Castillo recounted Mumm's history of mental illness, and described him as "fidgety and restless," "having trouble staying in his chair," that he "feels sad all the time," "has trouble with nightmares," "has trouble following directions" at home, and needs help "to get chores done like picking up toys." Administrative Record at 223. Mumm also was tested for a speech problem at age 3 1/2 and had been receiving speech therapy since that time. Dr. Castillo reported that Mumm's mother informed him that Mumm had "difficulty staying on task and paying attention," "trouble sitting still for any significant period of time even with fun activities such as playing with Nintendo, watching TV or drawing," and could "only maintain those activities for no longer than 15 minutes." Administrative Record 223. Dr. Castillo's report also indicates that Mumm's mother suffered toxemia beginning six and-a-half months into her pregnancy, but that other than "light therapy at birth for two or three days" Mumm has otherwise been healthy. Administrative Record at 224. In addition, Dr. Castillo's report described Mumm's affect as "bland," his mood as "neutral," and that he was "depressed and unhappy 'all of the time.'" Administrative Record at 224.

Dr. Castillo later referred Mumm to Steven Washler, LISW. On December 3, 1998, Mr. Washler evaluated Mumm. Mr. Washler noted "an increase in [Mumm's] frustration level because of his lack of skills consistent with other kids and his awareness of that and his discomfort with not being able to do the things other kids can do as well as they can do them." Administrative Record at 220. Mr. Washler noted Mumm's poor eye contact seemingly due to a "lack of interest," and that overall he is "unspontaneous" and does not

understand the reason for his evaluation. Administrative Record at 221. Mr. Washler's impression was that Mumm's behaviors were symptomatic of attention deficit disorder. Mr. Washler's overall diagnostic impression of Mumm's condition was "[a]ttention deficit hyperactivity disorder vs adjustment disorder with depressed mood, mental retardation unspecified." Administrative Record at 222.

On December 12, 2004,[2] Mumm was evaluated by school psychologist Linda W. Aubey. Dr. Aubey noted that Mumm was then taking sixty mgs of Strattera each day "to help him with mood, attention and anger control." Administrative Record at 226. According to Dr. Aubey, "[Mumm's] overall intellectual ability was found to fall in the 'mentally disabled' range and at the 1st percentile when compared with others in his same age range." Administrative Record at 226. She noted that while he "showed strength on the 'verbal comprehension index' which is a measure of one's ability to access verbally stored information, to express dieas [sic] in words to use common-sense reasoning skills," Mumm's "'working memory index' was extremely delayed." Administrative Record at 226. Dr. Aubey also commented that Mumm's "adaptive skills are, for the most part, similar or above those of other peers in mental disabilities programs," but that "some significant delays were noted in the areas of pre-vocational/vocational skills, self-direction and language development, when compared with regular education peers." Administrative Record at 226.

On February 13, 2009, Mumm was referred by the Disability Determination Services Bureau to School Psychologist Michele McNeal for an assessment of Mumm's intellectual functioning and a mental status exam. Dr. McNeal noted that past concerns about Mumm, including "lack of speech, failure to develop age appropriate peer relations, disinterest in establishing a relationship with anyone, limited facial expressions, inability

_____

[2] Exhibit 2F states that the year of evaluation was 2001. I assume this is incorrect, considering that the document repeatedly refers to Mumm as fourteen years of age and enrolled in the eighth grade, which would be anomalous if Mumm was in fact eleven at the time of the evaluation.

to understand nonverbal cues, and inability to engage in imaginative play" were still persistent. Administrative Record at 229. Dr. McNeal also noted that Mumm "is very sensitive to noise levels and becomes quite anxious in a somewhat loud, chaotic environment," and continues to struggle to "spontaneously interact[] with others and meeting new people." Administrative Record at 229. Dr. McNeal stated that Mumm was also prescribed Zoloft for several years beginning in early elementary school to treat anxiety and depression, but that Mumm stopped taking it after seventh grade.

Further, Dr. McNeal stated that Mumm has never used alcohol, illicit substances, or cigarettes, nor does he have any history of criminal or illegal conduct. Dr. McNeal noted that Mumm was able to independently care for his personal hygiene and grooming and likes to cook, but has difficulty understanding e-mail, reading recipes, and counting change. The report indicates that Mumm has a Verbal IQ of 75 (5th percentile), Performance IQ of 79 (8th percentile), and a Full Scale IQ of 75 (5th percentile). With respect to Mumm's mental status, Dr. McNeal noted that "[h]e acknowledges frequent feelings of worthlessness, hopelessness, guilt and low self-esteem." Administrative Record at 231.

With respect to his work capabilities, Dr. McNeal stated that Mumm "has the skills to understand, remember and carry out simple procedures, directions and locations," but "will likely have great difficulty maintaining the pace expected in a competitive work environment." Administrative Record at 231. Further, Dr. McNeal stated that coworkers and the public will have to "exercise patience when interacting with [him]," and that while his "attention and concentration appear intact given his cognitive ability[, i]t is likely his attention and concentration will be limited if in an anxiety-provoking setting," he "will likely struggle adapting to changes within the workplace when learning new tasks," and that he "will require a payee to manage any financial benefits to which he might be entitled." Administrative at 231. Dr. McNeal's diagnostic impressions were as follows:

Axis I:   Major Depressive Disorder
          Pervasive Developmental Disorder

|          | Learning Disorder, NOS |
|----------|------------------------|
| Axis II: | Borderline Intellectual Functioning |
| Axis III: | Tonsillectomy |
|          | Obesity |
| Axis IV: | Psychosocial Stressors: limited academic skills; limited vocational skills, no health insurance, limited support system |
| Axis V: | Global Assessment of Functioning: 48-50 |

Administrative Record at 232.

On March 4, 2009, Dr. Aaron Quinn reviewed Mumm's medical records and provided DDS with a psychiatric review technique and mental residual functional capacity assessment for Mumm. Dr. Quinn determined that Mumm had the following limitations: mild restriction of activities of daily living, mild difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. On the mental residual functional capacity assessment, Dr. Quinn determined that Mumm was moderately limited in his ability to understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, work in coordination with or proximity to others without being distracted by them, complete a normal work-day and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, respond appropriately to changes in the work setting, and set realistic goals or make plans independently of others.

In his summary, Dr. Quinn concluded that Mumm "has the medically determinable impairments of BIF, Learning Disorder NOS, Major Depressive Disorder, and Pervasive Developmental Disorder," and noted that while Mumm's current level of functioning was "severe," it nonetheless "does not meet/equal listing level severity." Administrative Record at 249. Dr. Quinn also noted that Mumm "is expected to have work-related difficulties with extended attention, detailed instructions, stress management, pace,

interpersonal functioning, judgment and change," but that he is capable of completing "1 to 2 step tasks on a sustained basis if he is able to work independent of others as needed." Administrative Record at 249.

## V.  CONCLUSIONS OF LAW

### A.  ALJ's Disability Determination

The ALJ determined that Mumm is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007); *Anderson v. Barnhart*, 344 F.3d 809, 812 (8th Cir. 2003). The five steps an ALJ must consider are:

> (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.

*Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citing *Eichelberger*, 390 F.3d at 590); *see also* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In order to establish a disability claim, "the claimant bears the initial burden to show that [he or] she is unable to perform [his or] her past relevant work." *Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998) (citing *Reed v. Sullivan*, 988 F.2d 812, 815 (8th Cir. 1993)). If the claimant meets this burden, the burden of proof then shifts to the Commissioner to demonstrate that the claimant retains the residual functional capacity ("RFC") to perform a significant number of other jobs in the national economy that are

13

consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Id.* The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. §§ 404.1545, 416.945. "It is 'the ALJ's responsibility to determine [a] claimant's RFC based on all the relevant evidence, including medical records, observations of treating physicians and others, and [the] claimant's own description of her limitations.'" *Page*, 484 F.3d at 1043 (quoting *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)); 20 C.F.R. §§ 404.1545, 416.945.

The ALJ first found that Mumm had not attained age twenty-two as of October 31, 2008. The ALJ then applied the first step of the analysis and determined that Mumm had not engaged in substantial gainful activity since October 31, 2008. At the second step, the ALJ concluded from the medical evidence that Mumm had the following severe impairments: borderline intellectual functioning, learning disorder NOS, major depressive disorder, and pervasive developmental disorder. At the third step, the ALJ found that Mumm did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Mumm's RFC as follows:

> In activities of daily living, the claimant has mild restriction. . . . In social functioning, the claimant has moderate difficulties. Although the claimant gets along well with family and two close friends, evidence revealed difficulties with maintaining interpersonal relationships and significant unease in social situations, particularly with unfamiliar people, settings, or in crowds. With regard to concentration, persistence or pace, the claimant has moderate difficulties. Mental status examination indicated the claimant would have difficulty maintaining pace in a competitive work environment. Attention and concentration appeared intact; however, would be limited if in an anxiety provoking setting. . . . Because the claimant's mental impairments do not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the "paragraph B" criteria are not satisfied. . . . [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels

> but with the following nonexertional limitations: low stress
> level job, such as a level 3, with 10 being the most stressful;
> limited to simple routine tasks; no contact with the general
> public; and limited contact with co-workers.

Administrative Record at 14-15. At the fifth step, the ALJ determined that there are jobs

that exist in significant numbers in the national economy that Mumm could perform,

including a hand packager, kitchen helper/dishwasher, and laundry worker II. Therefore,

the ALJ concluded that Mumm was not disabled.

### B.  Objections Raised By Claimant

Mumm argues that the ALJ erred in two respects. First, Mumm argues that the

ALJ failed to include all of Dr. McNeal's work-related limitations in this RFC assessment

and hypothetical questions to the vocational expert. Second, Mumm argues that the ALJ

failed to properly evaluate Mumm's subjective allegations under the standard laid out in

*Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984).

### 1.    Inclusion of Work-Related Limitations

Mumm argues that the ALJ's RFC and hypotheticals were incomplete because the

ALJ did not consider all of the limitations identified by Dr. McNeal. In the alternative,

Mumm argues that if the ALJ's exclusion of these limitations was proper, the ALJ failed

to give good reasons for doing so. Specifically, Mumm argues:

> Dr. Michele McNeal evaluated Mr. Mumm and concluded he
> had a number of significant work-related limitations. . . . The
> ALJ gave Dr. McNeal's opinions "significant weight" and
> found her opinions consistent with the record as a whole. The
> ALJ's residual functional capacity assessment, however,
> included a "portion" of Dr. McNeal's limitations. The ALJ
> failed to include these limitations. The ALJ should have
> included all credible limitations in his hypothetical question to
> the vocational expert and residual functional capacity
> assessment. Alternatively, the ALJ should have given good
> reasons for discounting Dr. McNeal's opinions.

Mumm's Brief (docket number 10) at 9. Mumm maintains that this matter should be remanded for a proper formulation of Mumm's RFC and hypothetical questions to the vocational expert.

Mumm claims that the ALJ's RFC is "materially different" from Dr. McNeal's assessment, Mumm's brief (docket number 10) at 9, and that the ALJ's decision not to address each of Dr. McNeal's observations about Mumm renders the ALJ's RFC deficient. However, reviewing the Administrative Record reveals that the two are not in fact "materially" different. The Court finds that the ALJ's exclusion of a single evaluator's specific observations of what would be *best* for a claimant does not render the ALJ's decision deficient, nor requires that the Court remand the case for further development of the record.

First, if the ALJ in his RFC does not specifically address an observation made in an evaluation of a claimant, it may be presumed that the ALJ determined that the observation was not a limitation on the claimant's ability. *See Depover v. Barnhart*, 349 F.3d 563, 567 (8th Cir. 2003) ("[A]ll of the functions that the ALJ specifically addressed in the RFC were those in which he found a limitation, thus giving us some reason to believe that those functions that he omitted were those that were not limited."). The specific examples that Mumm describes in his brief were properly omitted given that they were speculations and predictions about what would make Mumm *most* successful, and not direct assessments of Mumm's actual functional capacity. While Mumm may "likely have the most success . . . in a supportive environment with frequent feedback," Dr. McNeal does not suggest that such an environment is *necessary* for Mumm to be successful. Administrative Record at 231. Mumm's contention that coworkers and supervisors may require "great patience" when dealing with him is incorrect. Mumm's brief (docket number 10) at 12. Dr. McNeal, in fact, only stated that supervisors and colleagues will merely have to "exercise patience," not "great patience," when interacting with Mumm.

Administrative Record at 231. Thus, the Court finds that the ALJ did not err in omitting this from his discussion of Mumm's RFC. *See Depover*, 349 F.3d at 567.

Mumm further argues that the ALJ failed to consider his need for extra time to learn new tasks. However, in his assessment of Mumm's capabilities, the ALJ specifically referenced Mumm's "work-related issues with . . . change, judgment, and pace," noting that Mumm's "work prognosis would improve with treatment," and ultimately concluded that these limitations were not severe enough to preclude Mumm from obtaining employment. Administrative Record at 18. As stated above, where the ALJ does not specifically address certain claimed symptoms or deficits, it can be assumed that the ALJ thus did not consider them to be "limitations." *See id*. Given that there are ample employment opportunities for Mumm involving "repetitive, unskilled work" that requires "repeating the same tasks over and over," Administrative Record at 46, the ALJ reasonably concluded that Mumm's need for extra time when learning new tasks was not so limiting as to rise to the level of a disability.

An ALJ need not explain why he did not adopt every *portion* of a medical assessment. An ALJ may "discount or even *disregard*" portions of a medical assessment that the ALJ finds to be either immaterial to the disability determination or discredited by the evidence as a whole. *See Renstrom v. Astrue*, 680 F.3d 1057, 1064 (8th Cir 2012) (emphasis added); *see also Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1999) (reciting that "[a]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered," and finding it "highly unlikely" that, in not specifically rejecting every portion of a medical assessment, the ALJ "did not consider and reject" those portions); *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) (finding that the ALJ did not err in explicitly addressing *some* portions of a medical assessment and not others, and that the ALJ likely considered and rejected those portions that were not discussed). Here, the ALJ concluded that Dr. McNeal's evaluation of Mumm was consistent with Mumm's medical history, and that the limitations described above did not conflict with the medical evidence

as a whole. In other words, the ALJ did not reject Dr. McNeal's findings, but merely found that they were not inconsistent with the available evidence. Finding that the alleged limitations mentioned above did not conflict with a finding of no disability given all of the available evidence, the ALJ did not err by omitting discussion of them in his decision without any explanation for doing so. *See Craig*, 212 F.3d at 435-37.

## 2.   *Evaluation of Mumm's Subjective Allegations*

Mumm next argues that the ALJ erred by failing to sufficiently assess Mumm's subjective allegations regarding the limitations of his ability to work. Mumm asserts that the ALJ gave insufficient weight to Mumm's subjective complaints about the effects his condition had on his ability to work, and that a proper consideration of this evidence is necessary for an accurate RFC assessment.

The purpose of the RFC is not to ultimately reach a conclusion of disability based on what a claimant can *not* do – rather, it is to assess what a claimant *can* accomplish in light of his condition as a whole to the extent it does not interfere with his ability to work. *See* 20 C.F.R. § 416.945(a)(1). Part of this evaluation includes a consideration of the claimant's subjective symptoms or complaints about his condition. *Id.* at § 416.945(e). In assessing these subjective complaints, the ALJ must consider, in addition to medical evidence:

> (I)    [The claimant's] daily activities
> (ii)   The location, duration, frequency, and intensity of [the claimant's] your pain or other symptoms;
> (iii)  Precipitating and aggravating factors;
> (iv)   The type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate [the claimant's] pain or other symptoms;
> (v)    Treatment, other than medication, [the claimant] receive[s] or ha[s] received for relief of [the claimant's] pain or other symptoms;
> (vi)   Any measure [the claimant] use[s] or ha[s] used to relieve [the claimant's] pain or other symptoms . . . ; and
> (vii)  Other factors concerning [the claimant's] functional limitations and restrictions due to pain or other symptoms

18

*Id.* at § 416.929(c)(3)(i-vii); *see also Polaski*, 739 F.2d at 1320 (discussing these requirements). The regulations clearly require that the ALJ, in reviewing a denial of benefits, consider all available evidence in "evaluat[ing] the intensity and persistence of [the claimant's] symptoms so that [the ALJ] can determine how [the claimant's] symptoms limit [his] capacity to work." *Id.* at § 416.929(c)(1). The ALJ must then "evaluate [the claimant's] statements in relation to the objective medical evidence and other evidence, in reaching a conclusion as to whether [the claimant] is disabled." *Id.* at § 416.929(c)(4).

In addition to the claimant's own subjective complaints, the absence of objective medical evidence to support those complaints is also a relevant factor for an ALJ to consider. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001) (citation omitted). The ALJ, however, may not disregard a claimant's subjective complaints "solely because the objective medical evidence does not fully support them." *Polaski*, 739 F.2d at 1322; *see also Dukes v. Barnhart*, 436 F.3d 923, 928 (8th Cir. 2006) ("In discrediting subjective claims, the ALJ cannot simply invoke *Polaski* or discredit the claim because they are not fully supported by medical evidence.").

Instead, "'[a]n ALJ may discount a claimant's subjective complaints only if there are inconsistencies in the record as a whole.'" *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008) (quoting *Porch v. Chater*, 115 F.3d 567, 572 (8th Cir. 1997)); *see also Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) ("The ALJ may not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole."). If an ALJ discounts a claimant's subjective complaints, he or she is required to "'detail the reasons for discrediting the testimony and set forth the inconsistencies found.'" *Ford v. Astrue*, 518 F.3d 979, 982 (8th Cir. 2008) (quoting *Lewis v. Barnhart*, 353 F.3d 642, 647 (8th Cir. 2003)); *see also Baker v. Apfel*, 159 F.3d 1140, 1144 (8th Cir. 1998) ("When rejecting a claimant's complaints of pain, the ALJ must make an express

credibility determination, must detail reasons for discrediting the testimony, must set forth inconsistencies, and must discuss the *Polaski* factors.").

Mumm asserts that the ALJ did not find his complaints and subjective assessment of his limitations credible because they were not supported by the available medical evidence, and suggests that the ALJ's supposedly flawed evaluation of the medical evidence "taint[ed] the ALJ's credibility assessment." Mumm's Brief (docket number 10) at 14. In support of his argument, Mumm cites *Ford v. Astrue*, where the Eighth Circuit Court of Appeals held that remand for rehearing is warranted where the court "cannot say that [the evidence] weighs so heavily against [the claimant's] credibility that the ALJ would necessarily have disbelieved [the claimant] absent the erroneous inferences that [the ALJ] drew from the record." 518 F.3d at 983.

Unlike in that case, however, the ALJ's conclusions in the present case are not so erroneous. For example, in *Ford*, the Eighth Circuit found, among other things, that the ALJ erred in finding that the claimant's ability to perform simple tasks like washing dishes and cooking meals harmed the claimant's credibility with respect to the claimant's reports of *physical* pain. *Id.* at 983. The court found that such activities were not "inconsistent" with the claimant's subjective complaints. *Id.* Here, the ALJ cited Mumm's and his mother's own testimony regarding Mumm's physical and mental capabilities in discrediting Mumm's subjective complaints:

> At one point or another in the record, either in the forms completed in connection with the application, in medical records or other statements, the claimant reported activities of daily living including completing self-care independently, prepare simple meals, complete basic cleaning, go outside, play computer games, build models, shop with assistance, and watch television. These activities are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. . . . The claimant admitted to certain abilities that provide support for part of the [RFC] conclusion in this decision.

Administrative Record at 18-19. The ALJ determined that, given *all* of the evidence, both medical and otherwise, Mumm's subjective complaints were not credible to the extent he claims he cannot perform the types of repetitive, unskilled, low-stress work identified by the vocational expert.

The Court believes the ALJ adequately considered Mumm's subjective complaints in reaching his disability determination. As the ALJ expressly recognized, "no one doubts [Mumm] has some limitations." Administrative Record at 19. This is the precise reason that the ALJ greatly limited the scope of Mumm's abilities in the hypothetical posed to the vocational expert. However, the evidence as a whole supports the ALJ's ultimate conclusion that Mumm's subjective complaints were not credible. Having reviewed the entire record, the Court finds that the ALJ adequately considered and addressed the *Polaski* factors in determining that Mumm's subjective allegations of disability were not credible. *See Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir.2001); *see also Goff*, 421 F.3d at 791 (stating that an ALJ is not required to explicitly discuss each *Polaski* factor, and that it is sufficient if the ALJ acknowledges and considers those factors before discounting a claimant's subjective complaints); *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each *Polaski* factor as long as the analytical framework is recognized and considered.").

In evaluating the ALJ's disability determination, this Court "cannot reverse the ALJ's decision merely because the record contains substantial evidence supporting a contrary outcome." *Weiler v. Apfel*, 179 F.3d 1107, 1109 (8th Cir. 1999). It may be true that mental health treatment would not significantly improve Mumm's condition, or that Mumm's decision not to continue with school or search for employment resulted from something other than a lack of motivation, or that his ability to independently care for himself does not indicate that he would succeed in a work environment. However, the ALJ could have reasonably concluded from the available evidence that Mumm's subjective assessment of his own abilities was not credible, and this Court is not equipped to second-

21

guess that determination absent clear error. *See Baldwin v. Barnhart*, 349 F.3d 549, 588 (8th Cir. 2003) ("The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts."); *see also Guilliams*, 393 F.3d at 801 (explaining that deference to an ALJ's credibility determination is warranted if the determination is supported by good reasons and substantial evidence); *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003) ("If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, we will normally defer to the ALJ's credibility determination.").

## VI. CONCLUSION

The Court finds that in his RFC assessment for Mumm, the ALJ did not err by failing to explicitly discuss Dr. McNeal's speculations as to the environment in which Mumm would be most successful. The ALJ properly considered Mumm's medical records, observations of evaluating psychologists and social workers, and Mumm's own description of his limitations in making his RFC assessment for Mumm. Lastly, the ALJ made a proper credibility determination with respect to Mumm's subjective allegations of his symptoms and limitations. Accordingly, the Court determines that the ALJ's decision is supported by substantial evidence and must be affirmed.

## VII. ORDER

For the foregoing reasons, it is hereby **ORDERED**:

1. The final decision of the Commissioner of Social Security is **AFFIRMED**;

2. Plaintiff's Complaint (docket number 3) is **DISMISSED** with prejudice; and

3. The Clerk of Court is directed to enter judgment accordingly.

DATED this ___18th___ day of September, 2012.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA